1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA SANCHEZ, | Case No.  1:20-cv-00163-NONE-SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATION THAT DEFENDANTS' MOTION TO DISMISS AND STRIKE STATE LAW CLAIMS BE GRANTED IN PART AND DENIED IN PART** |
| v. | |
| LAW OFFICE OF LANCE E. ARMO and LANCE E. ARMO, | (Doc. 8) |
| Defendants. | **OBJECTIONS DUE: 21 DAYS** |

## I.    INTRODUCTION

On January 31, 2021, Plaintiff Angela Sanchez filed a complaint against Defendants Law Office of Lance E. Armo and Lance E. Armo (collectively, "Defendants"), alleging that Defendants violated the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1682 *et seq*. and the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*.  (Doc. 1 ("Compl.").)  On February 25, 2020, Defendants filed a motion to dismiss Plaintiff's complaint and to strike Plaintiff's state law claims (the "Motion").  (Doc. 8.)  Plaintiff filed an opposition to the motion on March 16, 2020.  (Doc. 10.)  Defendants filed a reply on March 25, 2020.  (Doc. 11.) Pursuant to the Standing Order in Light of Ongoing Judicial Emergency in the Eastern District of California (Doc. 6-1), the district judge took the matter under submission on the record and briefs. (*See* Doc. 9.)  The Motion was referred to the undersigned for the preparation of findings and recommendations on January 26, 2021.  (Doc. 23.)

The undersigned has considered the Motion, the parties' briefing, and supporting documentation. For the reasons set forth below, the undersigned recommends that the Motion be granted in part and denied in part.

## II.   BACKGROUND[1]

In October 2016, Plaintiff began renting a home in Clovis, California. (Compl. at ¶ 37.) In January 2017, she qualified for a Section 8 Housing Choice Voucher, which she began applying toward her rental home. (*Id.* at ¶ 38.) On January 8, 2019, the Fresno Housing Authority altered the terms of Plaintiff's Housing Assistance Payment Contract, thereby reducing her portion of the monthly rent from $132 to $0. (*Id.* at ¶ 39.)

On May 16, 2019, Plaintiff went to the front door of her home after she heard her dogs barking. (Compl. at ¶ 40.) Upon opening the door, she saw a sheet of paper taped to the screen door and a woman getting into a car. (*Id.* at ¶ 40.) Plaintiff waved at the woman, who stated that she was "from the lawyer's office." (*Id.* at ¶ 41.) The sheet of paper taped to the screen door was a Notice to Pay Rent or Quit (the "Notice"), sent by Defendants on behalf of Plaintiff's landlord. (*Id.* at ¶¶ 5, 9, 42.) From 2007 to 2016, Defendants "handled" approximately five percent of all unlawful detainer actions disposed of through the Fresno County Superior Court, and in 2019, Defendants' names appeared at least 170 times as counsel of record for landlords. (*Id.* at ¶¶ 5, 6.)

The Notice stated that Plaintiff owed $396 in past-due rent for the months of January, February, and March 2019. (Compl. at ¶ 43.) Plaintiff called a phone number on the Notice and reached a receptionist for Defendants. (*Id.* at ¶ 45.) Plaintiff informed the receptionist that she did not owe any rent for the months alleged in the Notice. (*Id.* at ¶ 45.) The receptionist told Plaintiff that she would call Plaintiff back after she pulled Plaintiff's file. (*Id.* at ¶ 46.) Plaintiff did not receive a call back from the receptionist regarding the Notice. (*Id.* at ¶ 47.)

On May 27, 2019, Defendants filed an unlawful detainer action against Plaintiff based on the Notice. (Compl. at ¶ 48.) The unlawful detainer was dismissed once "Defendants were forced

---

[1] The Court is required to accept as true all factual allegations in the amended complaint when resolving a Rule 12(b)(6) motion. *See Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008). Accordingly, the background section is derived from the factual allegations of the complaint (unless otherwise noted) and will be used to resolve this motion only.

1   to admit there was no debt."  (*Id.* at ¶ 48.)  Although Plaintiff was not evicted from her home, the

2   "looming threat of homelessness" gave Plaintiff severe anxiety and nervousness, which resulted in

3   Plaintiff experiencing paranoia and insomnia.  (*Id.* at ¶¶ 52, 55.)  Plaintiff also expended money

4   preparing to move from her home once she was sued for unlawful detainer.  (*Id.* at ¶ 56.)

### III.   LEGAL STANDARD

6          A motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") tests the

7   legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or

8   the absence of sufficient facts alleged under a cognizable legal theory.  *Conservation Force v.*

9   *Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quotation marks and citations omitted).   In

10  resolving a Rule 12(b)(6) motion, the Court's review is generally limited to the "allegations

11  contained in the pleadings, exhibits attached to the complaint, and matters properly subject to

12  judicial notice."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030–31 (9th Cir.

13  2008) (internal quotation marks and citations omitted).  Courts may not supply essential elements

14  not initially pled, *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014), and "'conclusory

15  allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for

16  failure to state a claim,'" *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir.

17  2010) (quoting *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)).

18         To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

19  as true, to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

20  (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (quotation marks omitted);

21  *Conservation Force*, 646 F.3d at 1242; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir.

22  2009).  The Court must accept the well-pleaded factual allegations as true and draw all reasonable

23  inferences in favor of the non-moving party.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998

24  (9th Cir. 2010); *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *Huynh v. Chase Manhattan*

25  *Bank*, 465 F.3d 992, 996–97 (9th Cir. 2006); *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153

26  (9th Cir. 2000).  Further,

27         If there are two alternative explanations, one advanced by defendant and the other
         advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a
28         motion to dismiss under Rule 12(b)(6).  Plaintiff's complaint may be dismissed

only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible. The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable. The factual allegations of the complaint need only "plausibly suggest an entitlement to relief." . . . Rule 8(a) "*does not impose a probability requirement at the pleading stage*; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations.

*Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011) (internal citations omitted) (emphases in original).

In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV.    DISCUSSION

Defendants set forth several reasons regarding why Plaintiff's complaint should be dismissed for failure to state a claim for which relief may be granted. (Doc. 8 at 10–11.) Defendants first contend that the FDCPA claims should be dismissed because Defendants are not "debt collectors" under the statute. They further contend the UCL claims should be dismissed because: (1) they are barred as a matter of law by the litigation privilege under California Civil Code § 47(b); (2) they are barred as a matter of law of law by the *Noerr-Pennington* doctrine; (3) Defendants' actions were not unlawful or unfair under the UCL; and (4) there is no evidence of Defendants' knowledge or effort to influence. (*Id.*) Defendants also contend that the UCL claims should be stricken as a strategic lawsuit against public participation ("SLAPP") under California Code of Civil Procedure § 425.16 because the claims arise from Defendants' protected petitioning activity in the unlawful detainer action. (Doc. 8 at 25–29.) Each argument is addressed in turn below.

### A.    Defendants' Request for Judicial Notice

As an initial matter, Defendants have requested judicial notice of the summons and complaint filed in the underlying unlawful detainer action, the proof of service of the summons, the answer in the unlawful detainer action, the court trial minute order indicating that the unlawful detainer was dismissed without prejudice, and an affidavit from Defendant Lance E. Armo (the

"Affidavit").  (Doc. 8-2 at 1–2.)  Plaintiff objects to Defendants' request for judicial notice of the Affidavit, which Plaintiff contends is extrinsic evidence.  (Doc. 10 at 14.)  As for the remaining documents that Defendants request judicial notice, Plaintiff objects to the extent that Defendants are asking the Court to take notice of any disputed facts, underlying arguments, and legal or factual conclusions.  (*Id.* at 14.)

"Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss," *Van Buskirk v. Cable News Network*, 284 F.3d 977, 980 (9th Cir. 2002), and cannot "consider[ ] evidence outside the pleadings," *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).  However, exceptions exist for "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice," which a court may properly consider "without converting the motion to dismiss into a motion for summary judgment." *Id.* (citations omitted).  "Courts may only take judicial notice of adjudicative facts that are not subject to reasonable dispute" or "some public records."  *Id.* at 908–09 (citations and internal quotation marks omitted).

The undersigned will take judicial notice of the summons and complaint filed in the underlying unlawful detainer action, the proof of service of the summons, the answer in the unlawful detainer action, and the court trial minute order because they are public records of the type subject to judicial notice.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (a court may take judicial notice "of court filings and other matters of public record"); *Dehoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 763 n.5 (9th Cir. 2018) (taking judicial notice of "government documents, court filings, press releases, and undisputed matters of public record").  However, judicial notice cannot be taken of the Affidavit attached to Defendants' motion to dismiss (Doc. 8-1).  Under Fed. R. Civ. P. 12(b)(6), the court evaluates a motion to dismiss solely on the basis of the complaint and does not consider extrinsic evidence—in this case, the Affidavit.  *See Park Miller, LLC v. Durham Grp., Ltd*., No. 19–CV–04185–WHO, 2020 WL 1955652, at *6 (N.D. Cal. Apr. 23, 2020) (declining to take judicial notice of a declaration accompanying the defendants' motion to dismiss "to the extent that it attempts to introduce extrinsic evidence to a motion to dismiss for failure to state a claim).

1   Accordingly, the undersigned will not consider the contents of the Affidavit in determining

2   whether the complaint states a claim under Rule 12(b)(6) and recommends that Defendants' request

3   for judicial notice be granted in part and denied in part.

4   **B.      Federal Claims Under the Fair Debt Collection Practices Act**

5   "To be held directly liable for violating the FDCPA, a defendant must, as a threshold

6   requirement, be a 'debt collector,' within the meaning of the statute." *Huy Thanh Vo v. Nelson &*

7   *Kennard*, 931 F. Supp. 2d 1080, 1087 (E.D. Cal. 2013) (citing *Heintz v. Jenkins*, 514 U.S. 291, 293

8   (1995)).    The FDCPA defines "debt collector" to include: (1) "any person who uses any

9   instrumentality of interstate commerce or the mails in any business the principal purpose of which

10  is the collection of any debts," and (2) any person "who regularly collects or attempts to collect,

11  directly or indirectly, debts owed or due or asserted to be owed or due another."   15 U.S.C. §

12  1692a(6); *McAdory v. M.N.S. & Assocs., LLC*, 952 F.3d 1089, 1092 (9th Cir. 2020) (referring to the

13  first definition as the "principal purpose" prong and to the second definition as the "regularly

14  collects" prong).   The phrase "debt collector" in the FDCPA "applies to a lawyer who 'regularly'

15  *through litigation* tries to collect consumer debts." *Heintz*, 524 U.S. at  292, 299 (original italics);

16  *accord McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011)

17  (holding that defendant law firm violated FDCPA).

18  Here, as alleged in the complaint, Defendants are "debt collectors" as defined by Section

19  1692a(6) of the FDCPA: "Defendants are in the business of litigating eviction actions on behalf of

20  landlords, including unlawful detainer actions based on notices demanding the payment of rent";

21  "Defendants are persons who use an instrumentality of interstate commerce or the mails in a

22  business, one principal purpose of which is the collection of debts"; and "Defendants are persons

23  who regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to

24  be owed or due another[.]"  (Compl. at ¶¶  17, 19, 21.)  Plaintiffs further allege that, from 2007 to

25  2016, Defendants "handled" approximately five percent of all unlawful detainer actions disposed of

26  through the Fresno County Superior Court, and, in 2019, Defendants' names appeared at least 170

27  times as counsel of record for landlords.  (*Id.* at ¶¶ 5, 6.)  "The FDCPA applies to litigation attorneys

28  involved in collection actions with the same force as to any other debt collector." *Royal v. Duringer*

6

1      *L. Grp., PLC*, No. 3:18–CV–00541–L–AGS, 2019 WL 1242447, at \*2 (S.D. Cal. Mar. 18, 2019).

2          As Plaintiff has alleged that debt collection is Defendants' principal purpose, and Defendants

3 served a Notice to Pay Rent or Quit on Plaintiff and instituted an unlawful detainer action against

4 her, both of which constitute "litigating activities of lawyers" subject to the FDCPA, Defendants are

5 "debt collectors" within the meaning of the statute. *See Heintz*, 514 U.S. at 294; *Gonzalez v. L. Off.*

6 *of Allen Robert King*, 195 F. Supp. 3d 1118, 1126–27 (C.D. Cal. 2016) (holding that attorney and

7 law firm that "made statements" to the plaintiff "in connection with collecting . . . past due rent on

8 behalf of his creditor client" and caused default judgment to be served" on the plaintiff was a debtor

9 under the FDCPA). Accordingly, the undersigned recommends that Defendants' motion to dismiss

10 the FDCPA claims on the grounds that they are not "debt collectors" be denied.

11 **C.**      **State Law Claims Under California's Unfair Competition Law**

12         **1.**      **Litigation Privilege**

13          Defendant contends that the UCL claims are barred by the litigation privilege under

14 California law because the claims are made based on communications made during the unlawful

15 detainer action. (Doc. 8 at 13–18.) "A publication or broadcast made as part of a judicial proceeding

16 is privileged under [California] Civil Code section 47, subdivision (b). In general, this privilege

17 applies to any communication that is made in judicial or quasi-judicial proceedings by litigants, or

18 other participants authorized by law, to achieve the objects of the litigation. The privilege also

19 covers communications that have some connection or logical relation to the action. Thus, the

20 privilege covers communications made to achieve the objects of the litigation, even though the

21 publication is made outside the courtroom, including communications having some relation to an

22 *anticipated* lawsuit that is contemplated in good faith and under serious consideration." *People v.*

23 *Persolve, LLC.*, 160 Cal. Rptr. 3d 841, 846 (Cal. Ct. App. 2013) (internal quotation marks and

24 citations omitted) (original italics).

25          Rather than proscribing specific practices, "[t]he UCL sets out three different kinds of

26 business acts or practices that may constitute unfair competition: the unlawful, the unfair, and the

27 fraudulent." *Rose v. Bank of America, N.A.*, 304 P.3d 181, 183 (Cal. 2013). "Under the "unlawful"

28 prong, a practice violates the UCL if it also violates another state or federal law; the UCL "borrows"

1   violations of other laws and treats them as independently actionable.  *Cel-Tech Communications,*

2   *Inc. v. Los Angeles Cellular Telephone Co.*, 973 P.2d 527, 539 (Cal. 1999).  "[B]y borrowing

3   requirements from other statutes, the UCL does not serve as a mere enforcement mechanism [of the

4   other statutes].  [Rather, the UCL] provides its own distinct and limited equitable remedies for

5   unlawful business practices, using other laws only to define what is 'unlawful.' "  *Rose*, 304 P.3d at

6   185.  When the "borrowed" statute underlying a UCL claim is more specific than the litigation

7   privilege, *i.e.*, the statute would be significantly or wholly inoperable if the privilege applied, then

8   the privilege will not shield violations of that statute.  *Persolve*, 160 Cal. Rptr. 3d at 847, 849.

9   　　　Defendant's contention that the UCL claims are barred by the litigation privilege under

10   California law is unavailing, because UCL claims based on conduct that is specifically prohibited

11   by the FDCPA are not barred by the litigation privilege.  *Persolve*, 160 Cal. Rptr. 3d at 849 (citing

12   *Komarova v. Nat'l Credit Acceptance, Inc.*, 95 Cal. Rptr. 3d 880, 891 (Cal. Ct. App. 2009)).  As the

13   California Court of Appeal in *Persolve* explained, "Applying the privilege to unlawful practices

14   based on specific violations of the [FDCPA] would effectively render the protections afforded by

15   [the FDCPA] meaningless."  *Id.*  Indeed, "[u]nfair debt collection practices could be immunized

16   merely by filing suit on the debt."  *Id.* at 848 (citing *Komarova*, 95 Cal. Rptr. 3d at 891–92).

17   Therefore, the undersigned recommends that Defendant's motion to dismiss the UCL claims as

18   barred by the litigation privilege be denied.

19   　　　　　**2.**　　　**The *Noerr-Pennington* Doctrine**

20   　　　Defendant also contends that the UCL claims are barred as a matter of law by the *Noerr-*

21   *Pennington* doctrine.  (Doc. 8 at 18–20.)  "Under the *Noerr-Pennington* doctrine, those who petition

22   any department of the government for redress are generally immune from statutory liability for their

23   petitioning conduct."  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (citing *Empress*

24   *LLC v. City & Cnty. of San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005)); *see also E. R.R.*

25   *Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v.*

26   *Pennington*, 381 U.S. 657 (1965).  "[T]he *Noerr-Pennington* doctrine ensures that persons are not

27   punished for the act itself of filing a lawsuit, but the doctrine does not immunize all conduct related

28   to such activity.  For example, if an attorney committed clear perjury and willfully lied in pleadings

8

submitted to the Court, the *Noerr-Pennington* doctrine would not immunize him from any statutory liability for committing perjury—the doctrine primarily protects against statutes that seek to penalize the act of filing itself." *Linder v. Eason*, No. SACV171294DOCJDEX, 2018 WL 3816763, at *8 (C.D. Cal. June 29, 2018).

Numerous courts have rejected arguments that the *Noerr-Pennington* doctrine precludes liability under the FDCPA for petitioning conduct. *See, e.g.*, *Kendricks v. Collect Access, LLC*, No. 519CV01134ODWSHKX, 2021 WL 256802, at *4 (C.D. Cal. Jan. 26, 2021); *Linder*, 2018 WL 3816763, at *8–*9; *Applewhite v. Anaya L. Grp.*, No. EDCV 14-00385 JGB (SPx), 2015 WL 11438097, at *5 (C.D. Cal. June 15, 2015); *Gerber v. Citigroup, Inc.*, No. CIV S07-0785WBSJFMPS, 2009 WL 248094, at *4 (E.D. Cal. Jan. 29, 2009); *Sial v. Unifund CCR Partners*, No. 08CV0905JM(CAB), 2008 WL 4079281, at *3 (S.D. Cal. Aug. 28, 2008). As with the litigation privilege, discussed above, "[t]o find defendants immunized by the *Noerr-Pennington* doctrine would eviscerate the Fair Debt Collection Practices Act. Debt collectors should not be able to employ tactics forbidden by the FDCPA simply because they also happen to be lawyers, or because they are attempting to collect on a debt owed." *Gerber*, 2009 WL 248094, at *4.

Here, as Plaintiff's UCL claims are based on alleged violations of the FDCPA, which are not barred by the *Noerr-Pennington* doctrine, the Court concludes that Plaintiff's UCL claims are likewise not barred by the *Noerr-Pennington* doctrine by extension of the reasoning in *Persolve* (*see supra* Section IV.B.1). *See Persolve*, 160 Cal. Rptr. 3d at 849 (holding that UCL claims based on conduct that is specifically prohibited by the FDCPA are not barred by the litigation privilege). Plaintiff is not seeking to impose liability for Defendants' act of filing the unlawful detainer action. Plaintiff instead alleges that the Notice to Pay Rent or Quit and the unlawful detainer were baseless because Plaintiff did not owe any debt. (*See* Compl. at ¶¶ 71, 74.) The *Noerr-Pennington* doctrine does not immunize defendants from allegedly making misrepresentations during legal proceedings. *MedImmune, Inc. v. Genentech, Inc.*, No. CV 03-2567MRP, 2003 WL 25550611, at *7 (C.D. Cal. Dec. 23, 2003) ("Where misrepresentations to a court 'deprive the litigation of its legitimacy' they can cause a party to lose Noerr-Pennington [sic] immunity.") (citing *Kottle v. Northwest Kidney Centers*, 146 F.3d 1056, 1060 (9th Cir. 1998)).

Indeed, "[w]hile *Noerr-Pennington* immunity is broad, it is not so broad as to cover all litigation: 'Sham' petitions [do not] fall within the protection of the doctrine." *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184–84 (9th Cir. 2005). The Ninth Circuit Court of Appeals has recognized three circumstances when litigation might be sham:

> First, if the alleged anticompetitive behavior consists of bringing a single sham lawsuit (or a small number of such suits), the antitrust plaintiff must demonstrate that the lawsuit was (1) objectively baseless, and (2) a concealed attempt to interfere with the plaintiff's business relationships.
>
> Second, if the alleged anticompetitive behavior is the filing of a series of lawsuits, "the question is not whether any one of them has merit—some may turn out to, just as a matter of chance—but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival."
>
> Finally, in the context of a judicial proceeding, if the alleged anticompetitive behavior consists of making intentional misrepresentations to the court, litigation can be deemed a sham if "a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy."

*Kottle*, 146 F.3d at 1060 (citations omitted) (quoting *USS–POSCO Indus. v. Contra Costa County Bldg. & Constr. Trades Council*, 31 F.3d 800, 811 (9th Cir. 1994); *Liberty Lake Invs., Inc. v. Magnuson*, 12 F.3d 155, 159 (9th Cir. 1993)).

Here, Plaintiff alleges that Defendants sent her the Notice despite the fact that she owed no rent, and Defendants proceeded to file the unlawful detainer action based on the Notice (allegation of misrepresentation) even after Plaintiff notified them that fact (allegation that misrepresentation was intentional). (Compl. at ¶¶ 43, 45, 48.) Thus, the third circumstance—intentional misrepresentation—applies to exempt the UCL claims from *Noerr-Pennington* immunity.

Based on the foregoing, the undersigned recommends that the motion to dismiss the UCL claim under the *Noerr-Pennington* doctrine be denied.

**3.     Theories of Liability**

The UCL makes actionable any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009). Plaintiff alleges claims under the unlawful and unfair prongs of the UCL. (Compl. at ¶¶ 69–74.) Defendants assert that their actions were neither unlawful nor unfair. (Doc. 8. at 22–24.)

10

### a. Unlawful Conduct

"An 'unlawful' business practice or act within the meaning of the UCL 'is an act or practice, committed pursuant to business activity, that is at the same time forbidden by law.' " *People ex rel. Harris v. Pac Anchor Transp., Inc.*, 125 Cal. Rptr. 3d 709, 715 (Cal. Ct. App. 2011) (quoting *Bernardo v. Planned Parenthood Federation of Am.*, 9 Cal. Rptr. 3d 197, 222 (Cal. Ct. App. 2004)). As discussed above, the UCL "borrows" violations of other laws and treats them as independently actionable where a claim is alleged under the unlawful prong. *Cel-Tech*, 973 P.2d at 539.

Plaintiff's Complaint alleges that Defendants acted unlawfully by violating numerous provisions of the FDCPA, specifically by (1) having Defendants' agent and representative approach Plaintiff at her home to collect a debt that did not exist, in violation of 15 U.S.C. § 1692d; (2) making a false representation of the character, amount, or legal status of the alleged debt in the Notice and the unlawful detainer action filed, in violation of 15 U.S.C. § 1692e(2)(A); (3) falsely representing Defendants' ability to take away Plaintiff's property in relation to any nonpayment of debt, in violation of 15 U.S.C. § 1692e(4) & (5); (4) failing to state that Defendants were attempting to collect a debt and that any information obtained would be used for debt-collection purposes, in violation of 15 U.S.C.§ 1692e(11); (5) attempting to collect an amount not permitted by law, in violation of 15 U.S.C. § 1692f(1); and (6) failing to provide the legally mandated written notice of debt that informed Plaintiff of her right as a consumer to dispute the validity of the debt and/or request the name and address of the original creditor, and/or request that the debt be verified, within 30 days of receipt of the notice, in violation of 15 U.S.C. § 1692g(a).  (Compl. at ¶ 63.)

The FDCPA is a remedial statute and must be construed liberally in favor of the consumer. *McAdory*, 952 F.3d at 1092.  FDCPA claims are judged by whether the debt collector's conduct is "likely to deceive or mislead a hypothetical 'least sophisticated debtor.' " *Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996) (quoting *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988)).  Generally, a plaintiff can establish a prima facie case even without proof that the defendant's conduct was intentional or even negligent. *Tourgeman v. Collins Financial Services, Inc.*, 755 F.3d 1109, 1119 (9th Cir. 2014).

"To prevail on a claim for violation of the FDCPA, a plaintiff must establish that (1) the

1    plaintiff is a consumer, (2) who was the object of a collection activity arising from a debt, (3) the

2    defendant is a debt collector, and (4) the defendant violated a provision of the FDCPA." *Munoz v.*

3    *California Bus. Bureau, Inc.*, No. 1:15–CV–01345–BAM, 2016 WL 6517655, at *4 (E.D. Cal. Nov.

4    1, 2016) (citing *Turner v. Cook*, 362 F.3d 1219, 1227–28 (9th Cir. 2004)).  At issue here is whether

5    Plaintiff has sufficiently alleged that Defendants violated a provision of the FDCPA.[2]

6                                    **i.    15 U.S.C. § 1692d**

7         A debt collector "may not engage in any conduct the natural consequence of which is to

8    harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.

9    Plaintiff fails to make a plausible claim under Section 1692d, as Plaintiff alleges no facts suggesting

10   that the communication constituted violence or threat of violence, obscene language, or any of the

11   examples of prohibited conduct enumerated in Section 1692d.  *See id.* at § 1692d(1)–(6); *Gonzalez*,

12   195 F. Supp. 3d at 1128.

13        Plaintiff simply alleges that Defendants had "their agent and representative approach

14   [Plaintiff] at her home in attempting to collect a debt that did not exist."  (Compl. at ¶¶ 40–41, 63.)

15   This is insufficient to show that Defendants engaged in harassing, oppressive or abusive conduct in

16   violation of Section 1692d.  *See, e.g.*, *Jackson v. ASA Holdings*, 751 F. Supp. 2d 91, 99–100 (D.D.C.

17   2010) (finding that the defendants' foreclosure on plaintiff's properties despite allegedly knowingly

18   lying to plaintiff about giving her assistance with loan modification did not constitute harm,

19   oppression, or abuse under FDCPA).  Thus, Plaintiff fails to state a FDCPA claim under Section

20   1692d, and, in turn, a UCL claim based on a violation of that section of the FDCPA.

21                                   **ii.    15 U.S.C. § 1692e**

22        Section 1692e prohibits a debt collector from "us[ing] any false, deceptive, or misleading

23   representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  Such a

24   statement must be "material" to be actionable.  *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033

25   (9th Cir. 2010) (citation omitted).  "Whether conduct violates Section[] 1692e . . . requires an

26   objective analysis that takes into account whether 'the least sophisticated debtor would likely be

27

28   [2] The undersigned notes that Defendants only cursorily assert that they "did nothing unlawful," without addressing each of the FDCPA allegations that form the bases of the UCL claims raised by Plaintiff.  (*See* Doc. 8 at 24.)

                                             12

1   misled by a communication.' " *Id.* (quoting *Guerrero v. RJK Acquisitions LLC*, 499 F.3d 926, 934

2   (9th Cir. 2007)).   Plaintiff alleges that Defendants violated four subdivisions of Section 1692e.

3   (Compl. at ¶ 63.)

4          Section 1692e(2)(A) specifically provides that making a false representation of the character,

5   amount, or legal status of any debt is a violation of the section.  15 U.S.C. § 1692e(2)(A).  Plaintiff

6   alleges that Defendants violated this section by "making a false representation of the character,

7   amount, or legal status of the alleged debt in the Notice to Pay Rent or Quit and in the unlawful

8   detainer action filed." (Compl. at ¶ 63.)  Specifically, Defendants falsely represented that Plaintiff

9   owed $396 in rent when she actually owed nothing.  (*Id.* at ¶ 43.)  This is sufficient to state a FDCPA

10  claim under section 1692e(2)(A).  *See, e.g.*, *Afewerki v. Anaya L. Grp.*, 868 F.3d 771, 774–77 (9th

11  Cir. 2017) (finding "overstatement of the principal due in the state court complaint, exacerbated by

12  the statement of an inflated interest rate," stated a viable claim under section 1692e(2)); *White v.*

13  *First Step Group LLC*, No. 2:16–CV–02439–KJM–GGH) 2017 WL 4181121, at *8 (E.D. Cal. Sep.

14  19, 2017) (inclusion of incorrect debt amount in letter seeking to collect debt was a sufficient basis

15  to state a claim under section 1692e(2)(A)); *Hunt v. Check Recovery Sys., Inc.*, 478 F. Supp. 2d

16  1157, 1168–69 (N.D. Cal. 2007) (demanding unauthorized debt amount in letter violated section

17  1692e(2)(A)).

18         Plaintiff also alleges that Defendants violated subdivisions (4) and (5) of Section 1692e.

19  (Compl. at ¶ 63.)  Under Section 1692e(4), it is a violation of the section to make a "representation

20  or implication that nonpayment of any debt will result in the arrest or imprisonment of any person

21  or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such

22  action is lawful and the debt collector or creditor intends to take such action." 15 U.S.C. § 1692e(4).

23  Section 1692e(5) prohibits "the threat to take any action that cannot legally be taken or that is not

24  intended to be taken."  *Id.* at § 1692e(5).

25         Plaintiff's complaint alleges that Defendants represented they could evict Plaintiff from her

26  rental property if she failed to pay the alleged debt, which did not exist.  (Compl. at ¶¶ 9, 24, 39,

27  43.)  Plaintiff also alleges that Defendants made false and deceptive statements regarding a course

28  of conduct that was not intended to be taken: after Plaintiff notified Defendants she did not owe any

1   rent, Defendants informed her they would check her file and follow up with her, but failed to do so

2   before filing the unlawful detainer action. (*Id.* at ¶¶ 45–48.) *See Gonzalez*, 195 F. Supp. 3d at 1128–

3   29) ("[The p]laintiff pleads sufficient facts regarding [the d]efendants' course of conduct that was

4   not intended to be taken: [the d]efendants talked to [the p]laintiff regarding a possible dismissal,

5   failed to send a stipulation as indicated, then served [the p]laintiff with default judgment, all of

6   which appear to contradict [the d]efendants' stated intention to dismiss the action.").  Plaintiff has

7   thus sufficiently alleged violations of Sections 1692e(4) and (5).

8        Lastly, Plaintiff alleges that Defendants violated Section 1692e(11).  (Compl. at ¶ 63.)

9   Section 1692e(11) provides that it is a violation to "fail[ ] to disclose in the . . . initial oral

10   communication [with the consumer] . . . that the debt collector is attempting to collect a debt and

11   that any information obtained will be used for that purpose." 15 U.S.C. § 1692e(11).  "[T]he purpose

12   of the FDCPA requires a liberal construction of § 1692e(11) so as to protect the least sophisticated

13   consumer." *Costa v. Nat'l Action Fin. Servs.*, 634 F. Supp. 2d 1069, 1076 (E.D. Cal. 2007) (citation

14   omitted).  Consequently, courts "have tended to enforce" this section "strictly." *Calvert v. Alessi &*

15   *Koenig, LLC*, No. 2:11–CV–00333–LRH–PAL, 2013 WL 592906, at *5 (D. Nev. Feb. 12, 2013)

16   (citations omitted).

17        The complaint alleges that the Notice "never stated that Mr. Armo was a debt collector, that

18   the communication was an attempt to collect a debt, that all information obtained from [Plaintiff]

19   would be used to collect the debt, or the process for either requesting verification of the debt or

20   identification of the original creditor." (Compl. at ¶ 44.)  Plaintiff also alleges that Defendants

21   "fail[ed] to state that they were attempting to collect a debt and that any information obtained would

22   be used for debt-collection purposes." (*Id.* at ¶ 63.)  These allegations are sufficient to state a claim

23   under Section 1692e(11) because, as shown above, Plaintiffs have indeed alleged that Defendants

24   failed to comply with the mandated disclosure requirements.

25        Based on the foregoing, the undersigned finds that Plaintiff has stated viable claims for

26   violations of Section 1692e of the FDCPA.

27   ///

28   ///

14

### iii.      15 U.S.C. § 1692f(1)

The FDCPA prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Section 1692f(1) of the FDCPA specifically proscribes "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* at § 1692f(1). A debt collector can violate this section by sending a letter or filing a complaint seeking to collect an erroneous amount of debt from the consumer. *See, e.g.*, *White*, 2017 WL 4181121, at *8 (inclusion of incorrect debt amount in letter seeking to collect debt was a sufficient basis to state a claim under section 1692f(1)); *Hunt*, 478 F. Supp. 2d at 1169 (finding that demanding unauthorized debt amount in letter violated section 1692f(1)). Here, Plaintiff has sufficiently alleged a violation of Section 1692f(1) by stating that Defendants attempted to collect an amount of debt not permitted by law, as the Notice indicated that she owed $396 in rent when in fact nothing was owed given the change to her  Housing Assistance Payment Contract.  (Compl. at ¶¶ 39, 43, 63.)

### iv.      15 U.S.C. § 1692g(a)

Section 1692g provides that the debt collector must provide the debtor with a written notice with information on the debt within five days of the initial communication, if the initial communication did not contain such information. 15 U.S.C. § 1692g(a). Specifically, the consumer must be notified of: "(1) the amount of the debt; (2) the name of the creditor; (3) a statement that if the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer disputes the debt, the debt collector will mail the consumer verification of the debt or a copy of a judgment; and (5) a statement that, upon the consumer's written request, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor." *Terran v. Kaplan*, 109 F.3d 1428, 1430 (9th Cir. 1997); 15 U.S.C. § 1692g(a). Plaintiff alleges that Defendants "fail[ed] to provide the legally mandated written notice of debt that informed [her] of . . . her right to dispute the validity of the debt, and/or request the name and address of the original creditor, and/or request that the debt be verified, within 30 days receipt of the notice,"

1    and the Notice, the initial communication, failed to contain any of this information.  (Compl. at ¶¶

2    44, 63.)  This is sufficient to state a claim for a violation of Section 1692g(a) because Plaintiff has

3    alleged that Defendants did not provide her with the required information under the section.

4                    **b.  Unfair Practices**

5         A business practice that is not unlawful may nonetheless be actionable as an "unfair"

6    business practice.  *Cel-Tech*, 973 P.2d at 540.  A practice is unfair if it offends an established public

7    policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

8    *Gregory v. Albertson's, Inc.*, 128 Cal. Rptr. 2d 389, 394 (Cal. Ct. App. 2002).   Determining

9    unfairness "requires courts to 'examine the practice's impact on its alleged victim, balanced against

10   the reasons, justifications and motives of the alleged wrongdoer.' "  *Hodsdon v. Mars, Inc.*, 162 F.

11   Supp. 3d 1016, 1026 (N.D. Cal. 2016) (quoting *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152,

12   1169 (9th Cir. 2012)).  Where a claim of an unfair act or practice is predicated on public policy, "the

13   public policy triggering the violation must be tethered to a constitutional or statutory provision or a

14   regulation carrying out statutory policy."  *Id.*; *Gregory*, 128 Cal. Rptr. 2d at 395.

15        Plaintiff alleges that Defendants acted unfairly by: "failing to provide the legally mandated

16   written notice of debt; trying to obtain an unlawful judgment over debt that was falsely represented;

17   and by subsequently refusing to reveal to Plaintiff, upon request, information regarding what this

18   debt was for and why Defendants' actions were justified." (Compl. at ¶ 74.)  The undersigned finds

19   that "Defendants' [alleged] conduct in attempting to collect monies not owed," especially after

20   Plaintiff notified Defendants that she did not owe a debt (*Id.* at ¶¶ 45, 48, 74, 76), was arguably

21   unscrupulous and injurious to consumers.

22        The complaint also alleges that "Congress enacted the FDCPA to eliminate 'abusive debt

23   collection practices by debt collectors [and] to insure that those debt collectors who refrain from

24   using abusive debt collection practices are not competitively disadvantaged.' [Citations.]"  (*Id.* at ¶

25   28.)  The undersigned finds that Plaintiff has sufficiently alleged unfair practices by Defendants that

26   violate a public policy to protect consumers from abusive debt collection practices, which the

27   FDCPA is intended to protect against.  *See* 15 U.S.C. § 1692(e) ("It is the purpose of this subchapter

28   to eliminate abusive debt collection practices by debt collectors . . . and to promote consistent State

                                                    16

1    action to protect consumers against debt collection abuses.")

2         Therefore, Plaintiff has sufficiently stated a claim under the unfair prong of the UCL.

3         **4.    Lack of Knowledge of Effort to Influence**

4         Defendants contend the UCL claims must be dismissed because there is no evidence that

5    Defendants acted with "knowledge" or "effort to influence."  (Doc. 8 at 24.)  Specifically,

6    Defendants claim that "[t]here [wa]s no deception," as the institution of the unlawful detainer action

7    was a result of "a clerical error exacerbated by [Plaintiff's] failure to mitigate." (*Id.* at 24–25.) This

8    claim is unavailing.

9         As discussed above, for claims raised under the "unlawful" prong, the UCL "borrows"

10   violations of other laws and treats them as unlawful practices and makes those legal violations

11   independently actionable.  *Cel-Tech*, 973 P.2d at 539–40.  Plaintiff has based some of her UCL

12   claims on alleged violations of the FDCPA (Compl. at ¶¶ 70–72), which is a strict liability statute,

13   so the debt collector need not knowingly and intentionally violate its provisions, though intent is

14   relevant to determination of damages.  *Clark v. Cap. Credit & Collection Servs.*, *Inc.*, 460 F.3d

15   1162, 1175 (9th Cir. 2006).  Thus, allegations of knowledge or intent are unnecessary to state claims

16   based on violations of the FDCPA under the unlawful prong of the UCL.

17        Even assuming that knowledge or intent is required to prove claims of unlawful and unfair

18   practices under the UCL, Plaintiff has sufficiently made such allegations in her complaint.  Plaintiff

19   specifically alleges that "Defendants' misconduct was knowing, willful, and intentional," which is

20   supported by inferences that can be drawn from her other allegations that Defendants proceeded

21   with filing the unlawful detainer action even after Plaintiff called to notify Defendants that she did

22   not owe any rent.  (Compl. at ¶¶ 43, 45–48.)  Defendants claim that they did not act with any intent

23   deceive and the events were simply the result of a "clerical error."  (Doc. 8 at  24–25.)  In resolving

24   a Rule 12(b)(6) motion to dismiss, the court must accept all well-pleaded factual allegations as true

25   and draw all reasonable inferences in favor of the non-moving party.  *Daniels-Hall*, 629 F.3d at 998;

26   *Sanders*, 504 F.3d at 910; *Huynh*, 465 F.3d at 996-97; *Morales*, 214 F.3d at 1153.

27        Based on Plaintiff's allegations, and drawing all reasonable inferences in her favor, the

28   undersigned cannot find that Defendants' conduct was the result of a "clerical error."  Accordingly,

the undersigned recommends that the motion to dismiss the UCL claims for lack of knowledge or intent be denied.

**D.      Dismissal of the FDCPA Claim Under Section 1692d and the Accompanying UCL Claim is with Leave to Amend**

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. *Cook, Perkiss & Liehe*, 911 F.2d at 246–47.  In determining whether amendment would be futile, the court examines whether amending the complaint could cure the defects requiring dismissal "without contradicting any of the allegations of [the] original complaint."  *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).

Here, the dismissal is based on the failure to plead sufficient facts.  Accordingly, the undersigned recommends that Plaintiff's Section 1692d claim under the FDCPA and UCL claim based on a violation of that section of the FDCPA be dismissed with leave to amend.

**E.      Motion to Strike State Law Claims Under California Anti-SLAPP Statute**

**1.      Legal Standard**

The California legislature enacted California Code of Civil Procedure section 425.16(a) as a remedy for the "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."  Cal. Code Civ. P. § 425.16(a); *see also Equilon Enters., LLC v. Consumer Cause, Inc.*, 52 P.3d 685, 689 (Cal. 2002).  Such lawsuits are known as "SLAPP" suits, an acronym for "strategic lawsuit against public participation."  *Equilon Enters.*, 52 P.3d at 687 n.1.  SLAPP suits are civil lawsuits "aimed at preventing citizens from exercising their political rights or punishing those who have done so." *Simpson Strong-Tie Co. v. Gore*, 230 P.3d 1117, 1123 (Cal. 2010).  Section 425.16(a) provides that the statute shall be broadly construed.  *Rohde v. Wolf*, 64 Cal. Rptr. 3d 348, 354 (Cal. Ct. App. 2007).

A defendant opposing a SLAPP claim may bring a special motion to strike any cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue."  Cal.

18

Code Civ. P. § 425.16(b)(1).  The so-called "anti-SLAPP" statute provides a means of quickly identifying and eliminating SLAPP actions through early dismissal.  Because SLAPP suits seek to deplete "the defendant's energy" and drain "his or her resources," the legislature sought "to prevent SLAPPs by ending them early and without great cost to the SLAPP target."  *Kibler v. N. Inyo Cnty. Local Hosp. Dist.*, 138 P.3d 193, 197 (Cal. 2006) (citations omitted).  "Thus, in promulgating section 425.16, the California legislature provided that a 'special motion to strike may be brought early in the lawsuit and that discovery ordinarily may not proceed unless and until the court finds that the [plaintiff's] suit has a probability of success.' "  *Aeroplate Corp. v. Arch Ins. Co.*, No. CV F 06– 1099 AWI SMS, 2006 WL 3257487, at \*3 (E.D. Cal. Nov. 9, 2006) (citing *Rogers v. Home Shopping Network, Inc.* 57 F. Supp. 2d 973, 976 (C.D. Cal. 1999)).

"Special procedural rules apply where an anti-SLAPP motion is brought in federal court." *Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006); *see also Hopscotch Adoptions, Inc. v. Kachadurian*, No. CV F 09-2101 LJO MJS, 2011 WL 587357, at \*3 (E.D. Cal. Feb. 9, 2011).  Federal courts must apply federal standards when considering Section 425.16 motions.  *Rogers*, 57 F. Supp. 2d at 982.  "If a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of § 425.16(c) applies."  *Id.* at 983.

Although a Section 425.16 special motion to strike does not apply to federal claims in federal court, *see, e.g., Bulletin Displays, LLC*, 448 F. Supp. 2d at 1182; *Hopscotch Adoptions*, 2011 WL 587357, at \*4, the anti-SLAPP statute does apply to "state law claims that federal courts hear pursuant to their diversity jurisdiction."  *Hilton v. Hallmark Cards*, 599 F.3d 894, 900 (9th Cir. 2010).

A court considering a motion to strike under California's anti-SLAPP statute must engage in a two-part inquiry.  First, a defendant must make an initial prima facie showing that the plaintiff's suit arises from activity protected by the anti-SLAPP statute.  Cal. Code Civ. P. § 425.16(b)(1); *Brill Media Co. v. TCW Group, Inc.*, 33 Cal. Rptr. 3d 371, 374 (Cal. Ct. App. 2005), *disapproved on other grounds in Simpson Strong–Tie Co., Inc.*, 230 P.3d at 1128.  In determining whether the

19

1   defendant has made this showing, the California Supreme Court has stressed that "the critical point

2   is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's

3   right of petition or free speech." *City of Cotati v. Cashman*, 52 P.3d 695, 701 (Cal. 2002).

4        If the defendant is able to make this threshold showing, the burden shifts to the plaintiff to

5   demonstrate a probability of prevailing on the challenged claims. *Brill*, 33 Cal. Rptr. 3d at 373.

6   Accordingly, a plaintiff must show that the claim is "both legally sufficient and supported by a

7   sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by

8   the plaintiff is credited." *Jarrow Formulas, Inc. v. LaMarche*, 74 P.3d 737, 741 (Cal. 2003).  Claims

9   for which a plaintiff is able to satisfy this burden are "not subject to being stricken as a SLAPP."

10  *Id.*; *see also Roderick v. Weissman*, No. 1:11–CV–02093 LJO, 2012 WL 639463, at *2 (E.D. Cal.

11  Feb. 24, 2012).

12        **2.    Analysis**

                **a.  Defendants Have Met Their Burden of Showing that Plaintiff's Suit Arises from
13                    Protected Activity**

14        Defendants bear the initial burden of making a prima facie showing that Plaintiff's suit arises

15  from activity that is protected under California's anti-SLAPP statute. Cal. Code Civ. P. §

16  425.16(b)(1); *Brill Media Co.*, 33 Cal. Rptr. 3d at 374.  "[T]he critical consideration is whether the

17  cause of action is based on the defendant's protected free speech or petitioning activity." *Navellier*

18  *v. Sletten*, 52 P.3d 703, 536 (Cal. 2002).  "[A] defendant that satisfies its initial burden of

19  demonstrating the targeted action is one arising from protected activity faces no additional

20  requirement of proving the plaintiff's subjective intent . . . . Nor need a moving defendant

21  demonstrate that the action actually has had a chilling effect on the exercise of such rights." *Id.*

22  (citation omitted).  "A defendant meets this [protected activity] burden by demonstrating that the

23  act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16,

24  subdivision (e)." *Braun v. Chronicle Publishing Co.*, 61 Cal. Rptr. 2d 58, 61 (Cal. Ct. App. 1997).

25        California Code of Civil Procedure 425.16(e) provides:

26        As used in this section, "act in furtherance of a person's right of petition or free
          speech under the United States or California Constitution in connection with a public
27        issue" includes:

28        (1) any written or oral statement or writing made before a legislative, executive, or

judicial proceeding, or any other official proceeding authorized by law;

(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;

(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest;

(4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Code. Civ. P § 425.16(e).

In her UCL cause of action, Plaintiff alleges both unfair and unlawful conduct based primarily "on [Defendants'] sending of the three-day notice to pay or quit" (Doc. 10 at 30; Compl. at ¶¶ 63, 71, 74), which she contends is not protected activity (Doc. 10 at 29–30).  Plaintiff also asserts in her opposition to the Motion that her UCL claims are not based on Defendants' filing of the unlawful detainer action, but proceeds to state that she "does allege a UCL violation by [Defendants] in their filing of an unlawful detainer against her[.]"  (Doc. 10 at 30.)  Defendants contend that Plaintiff's UCL claims arise from their protected petitioning activity in the unlawful detainer action and the anti-SLAPP statute thus applies.  (Doc. 8 at 26–27.)

"[S]tatements, writings, and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest.  [Citations.]"  *Rohde*, 64 Cal. Rptr. 3d at 354.  "The prosecution of an unlawful detainer action indisputably is protected activity within the meaning of section 425.16." *Birkner v. Lam*, 67 Cal.Rptr.3d 190, 195 (Cal. Ct. App. 2007) (citing *Jarrow Formulas*, 74 P.3d at 741); *Feldman v. 1100 Park Lane Assocs.*, 74 Cal. Rptr. 3d 1, 10–11 (Cal. Ct. App. 2008). "Service of a three-day notice to quit [i]s a legally required prerequisite to the filing of the unlawful detainer action" and thus also protected activity.  *Feldman*, 74 Cal. Rptr. 3d at 11; *see also Birkner*, 67 Cal. Rptr. 3d at 196 (holding that that the service of a termination notice was protected activity under the anti-SLAPP statute where the record demonstrated that the plaintiffs' "sole basis for liability" in each of the alleged causes of action "was the service of a termination notice, pursuant to Rent Ordinance, and [the defendant's] refusal to rescind it after [the plaintiffs] informed him that they constituted a protected household.") (internal quotation marks omitted).

21

Based on the foregoing, both the sending of the Notice and the filing of the unlawful detainer action are protected activities within the meaning of the anti-SLAPP statute.  As such, Defendants have met their prima facie burden to show that Plaintiff's suit arises under activity protected by California's anti-SLAPP statute.

### b. Plaintiff Has Carried Her Burden to Demonstrate a Probability of Prevailing on All but One of the UCL Claims

As Defendants have met their burden, the burden shifts to Plaintiff to show the probability of prevailing on the challenged claims.  Cal. Code Civ. P. § 425.16(b)(1); *Jarrow Formulas*, 74 P.3d at 741.  "In the anti-SLAPP context, 'probability' is a low bar.  To withstand an anti-SLAPP motion to strike in California,

> the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient *prima facie* showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.  In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant; though the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim."

*Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1163 (9th Cir. 2011) (quoting *Manufactured Home Communities, Inc. v. Cnty. of San Diego*, 655 F.3d 1171, 1176–77 (9th Cir. 2011) (internal alterations and quotation marks omitted)).  The procedure is meant to prevent abusive SLAPP suits, while allowing "claims with the requisite minimal merit [to] proceed."  *City of Montebello v. Vasquez*, 376 P.3d 624, 631 (Cal. 2016).

"Where, as here, the process of discovery is not begun or is incomplete, the rule . . . is . . . . [i]f the motion pursuant to section 425.16 challenges the legal sufficiency of the complaint, and does not require the consideration of facts that are produced through the discovery process, then the issue is decided under the standards applicable to a motion to dismiss pursuant to Rule 12(b)(6) . . . [and] (2) If the motion challenges the factual basis of the plaintiff's case, and relies on declarations and affidavits produced through the discovery process, then the application of Rule 56 may require the motion to strike pursuant to section 425.16 be denied as premature."  *Aeroplate Corp.*, 2006 WL 3257487, at *5 (citing *Rogers*, 57 F. Supp. 2d at 982–83).

As noted above, Plaintiff alleges a UCL cause of action under both the unlawful and unfair prongs of the statute—with the former based on violations of the FDCPA.  Turning first to claims under the unlawful prong, Plaintiff's complaint adequately pleads UCL claims if Plaintiff sufficiently states claims for violations of the FDCPA.  "To prevail on a claim for violation of the FDCPA, a plaintiff must establish that (1) the plaintiff is a consumer, (2) who was the object of a collection activity arising from a debt, (3) the defendant is a debt collector, and (4) the defendant violated a provision of the FDCPA."  *Munoz*, 2016 WL 6517655, at *4 (citing *Turner*, 362 F.3d at 1227–28).

For the FDCPA's first and second elements, the plaintiff must show the collection activity involved a consumer debt.  A " 'consumer' " is "any natural person obligated or allegedly obligated to pay any debt."  15 U.S.C. § 1692a(3).  A " 'debt' " is a consumer's obligation to "pay money arising out of a transaction" in which "the subject of the transaction [is] primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  *Id.* at § 1692a(5).  Here, the complaint alleges that "Plaintiff is a 'consumer' within the meaning of 15 U.S.C. § 1692a(3) because she is a natural person alleged to owe debt to the third party in the form of an obligation to pay money on a transaction for personal, family, or household purposes" (Compl. at ¶ 61); specifically, she was alleged to have owed a $396 debt in past-due rent to her landlord (*id.* at ¶¶ 23, 43).  Thus, crediting the evidence in the pleadings, Plaintiff has sufficiently carried her burden as to the first two elements.

Next, as discussed above (*see supra* Section IV.B), Defendants are "debt collectors" within the meaning of the FDCPA.  The complaint alleges that debt collection is Defendants' principal purpose, and Defendants served the Notice on Plaintiff and then filed an unlawful detainer action against her, both of which constitute "litigating activities of lawyers" subject to the FDCPA.  *See Heintz*, 514 U.S. at 294; *Gonzalez*, 195 F. Supp. 3d at 1126–27.

Regarding the last element—that Defendants violated a provision of the FDCPA—the undersigned refers to the analysis and findings in Section IV.C.3.a and concludes that Plaintiff has sufficiently carried her minimal burden under the anti-SLAPP statute as to the UCL claims based on violations of Sections 1692e, 1692f, and 1692g of the FDCPA, but has not carried that burden as

23

to the UCL claim based on a violation of Section 1692d.  The undersigned also finds that Plaintiff has demonstrated a probability of prevailing on the UCL claim based on unfair practices for the reasons explained in Section IV.C.3.b.

In asserting that Plaintiff has failed to carry her burden to demonstrate a likelihood of prevailing on the merits of her UCL claims, Defendants reiterate the same contentions addressed in the preceding sections as to why Plaintiff fails to adequately plead claims under the UCL. Specifically, Defendants contend that the UCL claims are barred by the California litigation privilege and the *Noerr-Pennington* doctrine, that Defendants did not act unfairly or unlawfully under the UCL, and that Defendants lacked intent or knowledge in the challenged course of conduct. (Doc. 8 at 29.)  For the reasons set forth above, the undersigned finds these contentions unavailing. (*See* Section IV.C.)

Based on the foregoing, the undersigned recommends that the motion to strike the UCL claim based on a violation of 15 U.S.C. § 1692d be granted, and the motion to strike the remainder of the UCL claims based on violations of the FDCPA and unfair practices be denied.

### c.  Leave to Amend the Complaint Will Be Granted for the UCL Claim Based on a Violation of 15 U.S.C. § 1692d

California state courts require that leave to amend be denied if an anti-SLAPP motion is granted.  *See Schaffer v. City & Cnty. of S.F.*, 85 Cal. Rptr. 3d 880, 890 (Cal. Ct. App. 2008) (a plaintiff "cannot escape the anti-SLAPP procedures by simply amending her complaint") (citation omitted); *Simmons v. Allstate Ins. Co.*, 112 Cal. Rptr. 2d 397, 401 (Cal. Ct. App. 2001) ( "Allowing a SLAPP plaintiff leave to amend the complaint once the court finds the prima facie showing has been met [by defendant] would completely undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy.").

Plaintiff's state law claims, however, are based on diversity jurisdiction, and, as such, the motion is being determined under federal rules.  The Ninth Circuit has determined that an automatic denial of a plaintiff's right to amend an initial complaint is in "direct collusion" with the Federal Rules of Civil Procedure.  *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).  "[G]ranting a defendant's anti[-]SLAPP motion to strike a plaintiff's initial complaint

1  without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s

2  policy favoring liberal amendment." *Id.*  The Ninth Circuit further found that "the purpose of the

3  anti-SLAPP statute, the early dismissal of meritless claims, would still be served if plaintiffs

4  eliminated the offending claims from their original complaint.  If the offending claims remain in the

5  first amended complaint, the anti-SLAPP remedies remain available to defendants." *Id.*; *see also*

6  *Brown v. Elec. Arts, Inc.*, 722 F. Supp. 2d 1148, 1155 (C.D. Cal. 2010) (discussing that the

7  defendant's anti-SLAPP motion of the plaintiff's initial complaint had been unopposed, and that the

8  court granted the motion but also provided the plaintiff an opportunity to file an amended

9  complaint).

10       Here, as this is Plaintiff's initial complaint, the Ninth Circuit requires that Plaintiff be given

11  leave to amend the dismissed claim.  *Verizon*, 377 F.3d at 1091.  Accordingly, the undersigned

12  recommends that Plaintiff's UCL claim based on a violation of 15 U.S.C. § 1692d be dismissed with

13  leave to amend.

14       **3.**     **Attorneys' Fees**

15       Defendants requests an award of attorney's fees.  (Doc. 8 at 30.)  Section 425.16(c)(1) of the

16  anti-SLAPP statute provides that "a prevailing defendant on a special motion to strike shall be

17  entitled to recover . . . attorney's fees and costs."  Cal. Code Civ. P. § 425.16(c)(1).  This provision

18  is applied in federal court.  "[D]efendants sued in federal courts can bring anti-SLAPP motions to

19  strike state law claims and are entitled to attorneys' fees and costs when they prevail."  *Verizon*, 377

20  F.3d at 1091.

21       The award of attorney's fees to a prevailing defendant is mandatory, *see Ketchum v. Moses*,

22  17 P.3d 735, 741 (Cal. 2001), and the concept of what renders a litigant a prevailing party is to be

23  broadly construed, s*ee* Cal. Code Civ. P. § 425.16(a).  "The term 'prevailing party' must be

24  interpreted broadly to favor an award of attorney fees to a partially successful defendant."  *Lin v.*

25  *City of Pleasanton*, 96 Cal.Rptr.3d 730, 743 (Cal. Ct. App. 2009) (citations omitted).  California

26  courts have recognized, however, that there are limits to such a designation of a prevailing party,

27  including that a party is not considered to have "prevailed" where "the *results* of the motion were

28  so insignificant that the party did not achieve any practical benefit from bringing the motion."  *Mann*

1    *v. Quality Old Time Serv., Inc.*, 42 Cal. Rptr. 3d 607, 614 (Cal. Ct. App. 2006) (emphasis added);

2    *see also Moran v. Endres*, 37 Cal. Rptr. 3d 786, 789 (Cal. Ct. App. 2006) ("[W]hen a defendant

3    cannot in any realistic sense be said to have been successful [on an anti-SLAPP motion], fees need

4    not be awarded.").  "The crucial question is one of practicality; did anything of substance (technical

5    victories notwithstanding) change in the posture of the case and the claims being lodged against the

6    defendant after it brought the special motion to strike than were in existence beforehand." *Brown*,

7    722 F. Supp. 2d at 1155.

8        In *Brown*, the court considered whether the defendant was entitled to attorney's fees after its

9    unopposed anti-SLAPP motion of the plaintiff's initial complaint was granted and plaintiff was

10   provided with an opportunity to file an amended complaint. *Id.* at 1155–57.  The defendant asserted

11   that its motion to strike was successful against all the plaintiff's claims. *Id.* at 1156.  The court found

12   that the defendant's " 'success' however, was relative.  True, [the defendant] had its motion to strike

13   all of the claims 'granted,' but at the same time, the Court's Order negated the import of that decision

14   by allowing [the plaintiff] the chance to re-allege all of those same claims against [the defendant]."

15   *Id.*  The court noted that the plaintiff had, in fact, filed an amended complaint and, as such, "the

16   posture of the case changed hardly at all following the resolution of [defendant's] first motion to

17   strike." *Id.*  Accordingly, the defendant obtained only a "technical" victory that did not warrant an

18   award of attorney's fees. *Id.* at 1156–57.

19       The *Brown* court also noted that a Ninth Circuit case, *Gardner v. Martino*, 563 F.3d 981,

20   991 (9th Cir. 2009), reviewed the position that the Ninth Circuit set forth in *Verizon* and determined

21   "that 'a *first amended complaint*' remained 'subject to anti-SLAPP remedies,' including the

22   provisions of fees and costs." *Id.* at 1157; *see also Gardner*, 563 F.3d at 991 ("Appellants had

23   already filed the first amended complaint as a matter of right and *Verizon* specifically held that a

24   *first amended complaint is subject to anti-SLAPP remedies.*") (citing *Verizon*, 377 F.3d at 1091)

25   (emphasis added).  As such, the *Brown* court concluded that anti-SLAPP remedies such as attorney's

26   fees were not available when the anti-SLAPP motion was brought against the plaintiff's initial

27   complaint. *Id.*

28

Since Defendants' anti-SLAPP motion is being considered in federal court, and since the Ninth Circuit requires that Plaintiff be given an opportunity to amend her complaint, *see Verizon*, 377 F.3d at 1091, the granting in part of Defendants' motion is considered a "technical" victory that does not warrant an award of attorney's fees to Defendant as the prevailing party.  *See Brown*, 722 F. Supp. 2d at 1156–57.  Accordingly, the undersigned will recommend that Defendants' request for attorney's fees be denied.[3]

## V.     CONCLUSION AND RECOMMENDATION

Based on the foregoing, the undersigned RECOMMENDS that Defendants' motion to dismiss and strike state law claims (Doc. 8) be GRANTED IN PART and DENIED IN PART as follows:

1.     Defendant's motion to dismiss the FDCPA and UCL claims based on a violation of 15 U.S.C. § 1692d be GRANTED with LEAVE TO AMEND;

2.     Defendant's motion to dismiss the remainder the FDCPA and UCL claims be DENIED;

3.     Defendant's anti-SLAPP motion to strike the UCL claim based on a violation of 15 U.S.C. § 1692d be GRANTED with LEAVE TO AMEND;

4.     Defendant's anti-SLAPP motion to strike the remainder of the UCL claims be DENIED; and

5.     Defendants' request for an award of attorney's fees be DENIED.

These findings and recommendation are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **twenty-one (21) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. §

---

[3] Even if the Court was able to recommend an award of attorney's fees, Defendants have provided no information about the amount to be awarded.  The burden of establishing entitlement to an attorneys' fee award lies solely with the claimant.  *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983).  In the Motion, Defendants state, "Rather than provide an estimate of the reasonable costs and fees incurred in bringing this Anti-SLAPP Motion at this time, ARMO will submit proof of such via a follow-up motion."  (Doc. 8 at 30.)  To date, no such filing has been made.

636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).


IT IS SO ORDERED.

Dated:   **March 31, 2021**                          /s/ *Sheila K. Oberto*
                                   UNITED STATES MAGISTRATE JUDGE